UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESSICA MARIE CARTER,

　　　　　Plaintiff,

　　v.

CAROLYN W. COLVIN,

　　　　　Defendant.

Case No.　14-cv-03875-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 21, 28

　　　　Plaintiff Jessica Marie Carter seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.  Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment.  Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and REMANDS the case for further proceedings consistent with this order.

## I.　BACKGROUND

　　　　On August 9, 2011,[1] Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. Administrative Record ("AR") 141-42.  Plaintiff alleges a disability onset date of February 1, 2011. AR 143.  Plaintiff's date last insured was March 31, 2011, so Plaintiff must establish that she was disabled on or before that date in order to receive benefits. AR 18.  Plaintiff's claim was initially denied on October 20, 2011. AR 72-76.  Plaintiff filed a Request for Reconsideration on December 13, 2011.  AR 88.  Plaintiff's Request

---

[1] The Administrative Record contains documents listing both August 9, 2011 and August 10, 2011 as the date Plaintiff applied for benefits. The Court will consider August 9, 2011 as the application date, as that is the date used by the Administrative Law Judge. The date of application has no effect on the outcome of this case.

United States District Court
Northern District of California

United States District Court
Northern District of California

for Reconsideration was denied on April 17, 2012, and Plaintiff filed a Request for Hearing on May 9, 2012. AR 89-94.  A hearing was held before Administrative Law Judge K. Kwon on December 10, 2012. AR 18-26.

Plaintiff is forty years old. AR 141.  She has two children, and is currently married. AR 35, 141-42.  Plaintiff graduated from high school. AR 35.  In totality, Plaintiff worked as a cashier for more than five years between 1998 and 2009. AR 172, 180.  From December 2009 to October 2010, Plaintiff worked as an in-home attendant. AR 172.

In September 2010, Plaintiff sought medical treatment from Caroline Hellings, M.D. AR 218-19.  Dr. Hellings noted that Plaintiff had scoliosis, but found her current condition to be asymptomatic. *Id.*  At that time, Plaintiff had presented for right hand problems that had become worse over the last few weeks. AR 219.  Dr. Hellings ordered diagnostic testing for rheumatoid arthritis and carpal tunnel. AR 220.

On October 29, 2010, Plaintiff underwent right carpal tunnel surgery, which was performed by Michael W. Grafe, M.D. AR 255-56.  The Court notes that this surgery occurred prior to the alleged disability onset date.

In September 2011, Dr. Hellings noted that while Plaintiff had a long history of back pain, including scoliosis surgery at age 11 due to a curve in her spine, she had not sought care for back pain for some time. AR 218.  Plaintiff reported that she had stopped working in October 2010 for carpal tunnel surgery and did not believe that she could go back to work. AR 217.  Dr. Hellings suggested that Plaintiff may want to pursue other treatment options before pursuing permanent disability. *Id.*

In October 2011, a state agency medical examiner concluded that there was no medical evidence of disability prior to Plaintiff's date last insured, so there was insufficient evidence to make a determination regarding her allegations. AR 74.  In April 2012, another State agency medical consultant affirmed the initial conclusion. AR 80.

On September 30, 2011, Alexander P. Iezza, M.D., performed an orthopedic consultative examination. AR 237-39.  At the exam, Plaintiff reported progressive pain around her spine and neck pain. AR 237, 239.  Dr. Iezza observed that Plaintiff's cervical paraspinal region was

diffusely tender to palpation, and Plaintiff experienced neck pain when rotated. AR 238. In October 2011, Plaintiff underwent a thoracic spine CT scan and a cervical spine MRI. The thoracic spine CT scan led to the impression of a double major scoliosis with posterior hardware and bony fusion. AR 248. The CT showed no evidence of loosening or fracture of hardware, or of central spinal canal or neural foraminal stenosis. *Id.* The cervical spine MRI showed disc degeneration with bulging at C6-7 and C7-TI. AR 246. At that time, Dr. Iezza's impressions were chronic cervical and thoracic pain, probable left carpal tunnel syndrome, and status-post right carpal tunnel release with improvement in pain and numbness. AR 236. Dr. Iezza gave Plaintiff a referral for facet joint injections and pain management. *Id.* He also discussed non-operative treatment options with Plaintiff and thought that she should follow up with Dr. Grafe after having nerve conduction studies to see if she is a candidate for a left carpal tunnel release. *Id.*

In November 2011, Plaintiff was referred to Michael L. Tran, M.D. for pain management, and Dr. Tran performed a cervical epidural steroid injection to address Plaintiff's chronic neck pain. AR 245, 273. Plaintiff received at least two other injections in December 2011 and May 2012. AR 276, 278.

Dr. Iezza saw Plaintiff in January 2012 and discussed non-operative treatment options for her chronic pain disorder, but Plaintiff declined a prescription for physical therapy. AR 234.

In January 2012, Plaintiff presented to Dr. Grafe for her right and left hands. AR 250. Dr. Grafe observed that Plaintiff may have some mild right elbow lateral epicondylitis, and had some symptoms of mild left hand carpal tunnel syndrome. *Id.* Dr. Grafe treatment plan was to observe, and see Plaintiff again in three months to see if her symptoms changed. *Id.* If the symptoms became more significant, Dr. Grafe would then contemplate a carpal tunnel release surgery. *Id.*

In April 2012, Plaintiff presented to Dr. Grafe for a follow up appointment, and informed him that her right hand was fine, but complained that her left hand had been bothering her. AR 343. Dr. Grafe's impression was that Plaintiff's left wrist did not have any signs of carpal tunnel. *Id.*

In July 2012, Plaintiff had a follow up appointment with Dr. Iezza. AR 231. Dr. Iezza's impression was that Plaintiff had chronic neck and back pain, and he discussed non-operative

treatment options with her, and recommended that she continue to be active and consider losing weight. AR 231-32.

In November 2012, Plaintiff informed Dr. Grafe that she was having problems with both hands, and that she was having a disability hearing soon. AR 341.  Upon examination, Dr. Grafe diagnosed Plaintiff with right elbow ulnar nerve irritation at the cubital tunnel, right thumb CMC pain, left hand carpal tunnel, left elbow ulnar nerve irritation at the cubital tunnel, and a possible dorsal ganglion cyst at the left wrist. AR 342. Dr. Grafe opined that Plaintiff's symptoms seemed to be manageable. *Id.* Plaintiff reported that she was attempting to significantly decrease or eliminate working as a cashier and in-home attendant. *Id.*  Dr. Grafe believed that with activity modification, Plaintiff's symptoms appeared to be tolerable and no intervention was needed. *Id.*

In December 2012, Dr. Hellings opined that Plaintiff had significant, albeit unquantified limitations with reaching, handling, or fingering, but she deferred assessment to Dr. Grafe. AR 360.  Despite this deference, and without elaboration, Dr. Hellings opined that Plaintiff would likely be absent from work three or more days per month. *Id.*

In a decision dated February 14, 2013, the ALJ found that Plaintiff was not disabled at any time between February 1, 2011, the alleged onset date, and March 31, 2011, the date last insured. AR 26.  On March 8, 2013, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 14.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on June 27, 2014. AR 1-6.  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On April 1, 2015, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 21.).  On July 1, 2015, Defendant filed its opposition. (Def.'s Opp'n, Dkt. No. 28.)  Plaintiff did not file a reply, so the motions are fully briefed.

## II.    LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a

preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.*  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R.  § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

United States District Court
Northern District of California

### III.     THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2011. AR 20.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 1, 2011, through her date last insured of March 31, 2011. AR 20.

At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: obesity, cervical degenerative disc disease with left cervical radiculopathy, status-post right carpal tunnel release, symptoms of left carpal tunnel syndrome, and remote history of thoracic spine fusion surgery. AR 20.

At step three, the ALJ concluded that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 21.

Before considering step four, the ALJ determined that Plaintiff has the residual functional capacity to

> perform light work as defined in 20 C.F.R. § 404.1567(b), except she requires a sit-stand option every thirty minutes to alternate positions. She can occasionally balance, stoop, kneel, crouch, and crawl, and occasionally climb ramps and stairs. The claimant should never climb ladders, ropes, or scaffolding, work at heights, or with heavy, hazardous machinery. She retains the ability to engage in frequent reaching, handling, and feeling, but should not engage in overhead work.

AR 22.  At step four, through the date last insured, the ALJ concluded that Plaintiff was capable of performing past relevant work as a cashier and in-home attendant. AR 24.  Lastly, the ALJ proceeded to step five, and concluded that, while Plaintiff was capable of performing past relevant work, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform and so she was not disabled for the purposes of the Social Security Act. AR 24-26.

### IV.     DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred in denying her application for social security benefits and that the case should be remanded for payment of benefits or, alternatively, for further proceedings for two reasons: (1) the ALJ erred by failing to

6

1    provide specific, clear, or convincing reasons for rejecting Plaintiff's testimony; and (2) the ALJ

2    erred by relying on vocational testimony that conflicts with the DOT and is unsupported by

3    persuasive evidence to explain the deviation. (Pl.'s Mot. at 4, 9.)

4        **A.    Plaintiff's Credibility**

5        Plaintiff argues that the ALJ erred in discounting Plaintiff's credibility by failing to provide

6    reasons for rejecting the testimony.  (Pl.'s Mot. at 11.)  Defendant contends that the ALJ provided

7    a valid basis for finding Plaintiff not fully credible, and her reasons were supported by substantial

8    evidence. (Def.'s Opp'n at 6.)

9        In evaluating a claimant's testimony regarding subjective pain or other symptoms, an ALJ

10   must engage in a two-step inquiry. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation

11   omitted).  An ALJ must first "determine whether the claimant has presented objective medical

12   evidence of an underlying impairment which could reasonably be expected to produce the pain or

13   other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations

14   and citations omitted).  At this step, a claimant need not show that her impairment "could

15   reasonably be expected to cause the severity of the symptom she has alleged; she need only show

16   that it could reasonably have caused some degree of the symptom." *Id.*  (internal quotation and

17   citations omitted).  Next, if a claimant meets this first prong and there is no evidence of

18   malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a

19   claimant's testimony about the severity of her symptoms.  *Id.*

20       In assessing a claimant's credibility, the ALJ must consider, in addition to the objective

21   medical evidence, the claimant's daily activities; the location, duration, frequency, and intensity of

22   the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the

23   type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to

24   alleviate the pain or other symptoms; treatment, other than medication, the claimant receives or

25   has received for relief of pain or other symptoms; any measures, other than treatment, the claimant

26   uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's

27   functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 SSR

28   LEXIS 4 (July 2, 1996).

As to the first prong, the ALJ found that Plaintiff's underlying impairments could reasonably be expected to cause the alleged symptoms. AR 23. As to the second prong, the ALJ discounted Plaintiff's testimony about the severity of her symptoms, finding that they were not entirely credible. *Id.*

Despite Plaintiff's contentions to the contrary, the ALJ specified which parts of Plaintiff's testimony she found not credible and offered several reasons to discredit Plaintiff's testimony. AR 23-24. Specifically, the ALJ found that there was insufficient evidence to support a finding of disability before and after the claimant's date last insured, and Plaintiff's testimony was contradicted by the medical evidence. AR 23.

The ALJ found that there was insufficient evidence to support a finding of disability before and after Plaintiff's date last insured, because Plaintiff's scoliosis was generally asymptomatic, and she had not sought care for back pain. AR 23. Further, Dr. Hellings suggested that Plaintiff should investigate treatment options before investigating permanent disability, but Plaintiff declined. AR 23, 218. At that time, Plaintiff reported that she had stopped working in October 2010 for right carpal tunnel surgery and did not think that she could work. AR 23, 217-18, 255. Thus, the ALJ properly discredited Plaintiff's subjective complaints due to her failure to seek treatment for back pain. *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995)(ALJ can draw inferences from lack of medical care). As to the carpal tunnel issues, Plaintiff underwent the right carpal tunnel surgery prior to the alleged onset date. AR 23.

Moreover, the ALJ identified several instances in which the medical evidence conflicted with Plaintiff's complaints. The ALJ pointed out that Drs. Grafe and Iezza were both taking conservative approaches to Plaintiff's treatment. AR 24. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)(citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Additionally, the ALJ noted that Plaintiff's own actions and statements discounted her claims of pain. For example, when Dr. Iezza discussed non-operative treatment options to address Plaintiff's pain, she declined a prescription for physical therapy. AR 24, 234. On another

8

occasion, Plaintiff told Dr. Hellings, her treating physician, prior to the alleged disability onset

date, that she did not believe that she could go back to work after her carpal tunnel surgery. AR

217.  When Plaintiff saw Dr. Grafe in November 2012, she informed him that her visit was due to

an upcoming disability hearing. AR 24, 341. After that visit, Dr. Grafe opined that Plaintiff's pain

was manageable. AR 24, 342.

For all of these reasons, the ALJ has sufficiently identified the testimony that is not

entirely credible, and cited evidence in the record that undermines Plaintiff's subjective

complaints that she was disabled as of the date last insured.  *Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998)(quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9,

1996)).

### B.    Vocational Expert Testimony

Plaintiff contends that the ALJ's assessed residual functional capacity does not allow for

the performance of the identified occupations, because the VE's testimony conflicts with the

Dictionary of Occupational Titles ("DOT"), which does not provide for a sit/stand option, and

there is no evidence to explain the deviation. (Pl.'s Mot. at 4-5.)  Defendant contends that Plaintiff

should have raised any perceived conflict with the DOT at the hearing, and that her failure to do so

is waived. (Def.'s Opp'n at 4.)

At step four, the ALJ determined that Plaintiff could perform her past relevant work of

cashier and in-home attendant as generally performed. AR 25.  "A claimant is not disabled under

the Act if she can perform her past relevant work either as actually performed or as generally

performed in the national economy." *Tweedy v. Astrue*, 460 F. App'x 659, 661 (9th Cir.

2011)(citing SSR 82–61; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)).  Work "as

actually performed" refers to the method in which the claimant actually performed her job,

regardless of how the DOT describes how the job should be performed; work "as generally

performed" refers to the DOT's description of how a specific job is performed. 20 C.F.R. §§

404.1520(a), 416.920(a).  The VE testified that an individual with Plaintiff's RFC could generally

perform the cashier position and actually perform the in-home attendant position with a sit/stand

option. AR 64-66. As provided in the hypothetical, the sit/stand option was really a position

United States District Court
Northern District of California

1    change, which would allow a person to still perform the job within the full definition of light duty,

2    which would be to sit, stand, and walk for a total of six out of eight hours. AR 66.

3            While the DOT is silent with respect to sit/stand options, this does render the sit/stand

4    option unavailable.  Indeed, when there is a conflict between the VE and the DOT, the ALJ must

5    obtain a reasonable explanation and explain how the conflict is resolved. *Buckner-Larkin v.*

6    *Astrue*, 450 F. App'x 626, 628 (9th Cir. 2011) (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4,

7    2000); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007).  Generally, when the

8    DOT is silent with respect to a sit/stand option, the ALJ will ask the VE to explain her basis for

9    the testimony regarding the sit/stand option in light of the fact that it is not contained in the DOT.

10   The failure to do so, while a procedural error, could be "harmless, were there no conflict, or if the

11   vocational expert had provided sufficient support for her conclusion so as to justify any potential

12   conflicts." *Massachi v. Astrue*, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007).

13           While the burden of proof lies with the claimant at step four, the ALJ still has a duty to

14   make the requisite factual findings to support her conclusion. *Pinto v. Massanari*, 249 F.3d 840,

15   844 (9th Cir. 2001).  Here, the ALJ's finding that Plaintiff was able to generally perform her past

16   relevant work requires VE testimony regarding how the position is performed in the national

17   economy. *See Tweedy v. Astrue*, 460 F. App'x 659, 661 (9th Cir. 2011).[2]  Despite Defendant's

18   claim to the contrary, the VE did not address the conflict with the DOT or explain how a sit/stand

19   option could be incorporated into the cashier or in-home attendant positions. (Def.'s Opp'n at 4;

20   AR 64-67.)  Moreover, the ALJ's decision not to adopt the VE's opinion that Plaintiff could

21   actually perform in-home attendant work required further testimony from the VE pertaining to the

22   deviation from the DOT, as well as an explanation for not adopting the VE's opinion.  Thus, the

23

24   ─────────────────────
     [2] Defendant incorrectly asserts that the ALJ found that Plaintiff could *actually* perform her past

25   relevant work, and then conflates the evidentiary support required when the ALJ finds that a
     claimant can actually perform past work versus generally perform past work. (Def.'s Opp'n at 4-

26   5.) *Tweedy* holds that when actual performance is found and there is substantial evidence in the
     record, any variance with DOT need not be addressed. 460 F. App'x at 661. Here, however, the

27   ALJ only found that Plaintiff could *generally* perform her past relevant work, rather than *actually*
     perform her work. AR 25. This distinction is significant, because if the ALJ had found that

28   Plaintiff could actually perform her past relevant work, the DOT deviation would be irrelevant to
     the step four inquiry.

United States District Court
Northern District of California

failure of the ALJ to elicit the testimony necessary to make factual findings regarding the incorporation of the sit/stand option into the past relevant work is more than harmless error because not only did the VE not acknowledge the deviation from the DOT, she did not offer an explanation for using a differing job description.  *See Flores v. Colvin*, 546 F. App'x 638, 641 (9th Cir. 2013)(citing *Massachi*, 486 F.3d at 1154 n. 19).

Defendant contends that Plaintiff did take issue with the ALJ's findings that she could perform past relevant work, so the argument is waived. (Def.'s Mot. at 4.)  The waiver argument is without merit, as Plaintiff did raise the issue of the sit/stand option as it pertains to her past relevant work. (*See* Pl.'s Mot. at 5.)

As a result, the ALJ's findings at step five, in which she finds that other jobs exist in the national economy that Plaintiff is capable of performing, suffer from the same deficiency regarding the lack of evidence to support a deviation from the DOT, and need not be discussed in full.

In light of the foregoing, the ALJ improperly relied on the VE's testimony, which requires that the case be remanded for further proceedings to determine at step four whether Plaintiff has the ability to perform past relevant work with a sit/stand option, and, if necessary, to determine at step five whether she can perform other substantial gainful work that exists in the national economy.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED, Defendant's cross-motion for summary judgment is DENIED, and this action is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings, specifically a new administrative hearing to obtain additional vocational expert testimony, consistent with this order.

IT IS SO ORDERED.

Dated: March 29, 2016

KANDIS A. WESTMORE
United States Magistrate Judge

11